## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DAVID R. GRATZ,**

      Plaintiff,

**v.**                         **Case No: 8:05-CV-898-T-17TGW**

**LANCE, INC., a foreign corporation,**

      Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

      This cause comes before this Court on Defendant's, Lance, Inc., Motion for Summary Judgment, filed June 14, 2006 (Dkt. 19), Defendant's Memorandum of Law in Support of their Motion for Summary Judgment (Dkt. 20), and Plaintiff's Response to Defendant's Motion for Summary Judgment, filed on July 17, 2006 (Dkt. 42). Also before this Court are Plaintiff's, David R. Gratz, Motion for Summary Judgment, filed June 14, 2006 (Dkt. 21), Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (Dkt. 21-22), and Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, filed July 17, 2006 (Dkt. 41). For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND

      On May 10, 2005, Plaintiff, David R. Gratz, filed this action against Defendant, Lance, Inc. ("Lance"), a foreign corporation, alleging discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 12101 *et seq.* ("ADEA") and the Florida Civil Rights Act of 1992, Florida Statute § 760.01 *et seq.*

("FCRA"). Defendant answered the complaint on June 1, 2005. Defendant and Plaintiff moved for summary judgment for both claims on June 14, 2006. Plaintiff and Defendant filed memoranda in opposition on July 17, 2006. The following are found to be "facts" for purposes of resolving both motions for summary judgment.

Plaintiff began employment with Defendant on June 16, 2003, as a route sales trainee for Branch 810 [hereinafter "Tampa Branch"] within the Orlando District. Plaintiff was born on February 5, 1945, and is presently sixty-one years of age. At all relevant times, Plaintiff was over forty years old. At the time of hire and throughout his employment with the Defendant, Plaintiff lived in Zephyrhills, Florida. In June 2003, Plaintiff went through a four-week training program qualifying him to service and run any route within the company. During this time, Plaintiff spoke to Chuck Angello, his manager, about wanting to be assigned the permanent route sales position in Clearwater because he was expecting to move to the area in the near future. Permanent routes at that time were assigned by the location of one's permanent home in relation to the route and the performance of the individual. Angello told the Plaintiff that he needed to move to Clearwater to get the Clearwater route. The Plaintiff, however, believed that Angello told him he would be the next in line for the Clearwater position.

After his training, Plaintiff serviced a variety of out-of-town routes, at times because the company was short-handed and he was the only trainee who had completed the training process. Bill Kangas, District Training Manager, increased the Plaintiff's out-of-town routes because of his experience in getting accounts. However, in August of 2003, Plaintiff began receiving poor performance reviews for service issues from managers Dave Myers, John Critz, Gary Ratliff, and others. The performance reviews were never relayed to the Plaintiff.

Months later Angello assigned the Clearwater route to Timothy Innamorato, a younger recent sales trainee, who lived closer to the route than the Plaintiff. Angello told

the Plaintiff he would have offered him the position had Ratliff given the approval. However, Ratliff told Angello that the plaintiff should not get the job because he had received poor performance reviews, did not live near the location, and might have to be replaced. Subsequently, in January of 2004 two other younger recent sales trainees, Don Dunbar and John Seeley Jr., were given permanent routes in Port Richey and Bradenton. Both individuals lived closer to these routes than the Plaintiff.

In response to these new assignments, the Plaintiff complained to Bill Kangas that he was the only trainee being sent out of town while younger trainees were staying near their homes and getting permanent routes. Plaintiff believed this was age discrimination because he had seniority over the younger trainees. In March 2004, the Plaintiff was offered the Clermont route, however, he declined it stating it was too far of a drive.

In June 2004, Plaintiff called Jerry Estes, Defendant's Sales Human Resource Director, about his discrimination concerns. Estes asked Greg Thompson, Human Resource Manager, to look into the complaint. An investigation was initiated. In June 2004, Lance began to reorganize the Orlando District by consolidating routes and implementing a bidding process for open routes in each branch. The new bidding process included a seniority element along with the geographical requirement.  Trainees, like the Plaintiff, were assigned to workgroups located closest to their homes to cut cost. Once at the workgroup location, each individual would have an opportunity to bid for the routes closest to his home. The reorganization transferred the Plaintiff to the Zephyrhills' workgroup located in the Ocala Branch preventing him from bidding on the Tampa-Clearwater routes he desired in the Tampa Branch.

In July 2004, Plaintiff was involved in an accident in one of his routes and was written up for cash remittance violation. A cash remittance violation occurs when a driver fails to deposit money he collected from his routes the next day in accordance to the standard policy. Whether the accident was preventable is disputed by Angello and the

3

Plaintiff.  On July 27, 2004, Plaintiff filed an Equal Employment Opportunity Complaint against the Defendant for age discrimination because they never gave him a permanent route and for transferring him to Ocala Branch. The complaint was received by Jerry M. Estes and Greg Thompson in late July. Greg Thompson investigated the issue by informing Ratliff, the District Sales Manager, about the complaint and questioning him as to whether any derogatory comments were made toward the Plaintiff. Ratliff denied any comments were ever made.

During this time, many managers were not happy with the Plaintiff's performance and wanted to get rid of him. Shortly after the reorganization was complete, Ratliff allegedly decided to offer the Plaintiff a route in the "boondocks" in hope that the Plaintiff would not take the route and quit. The route assigned was apparently in Lakeland. On August 4, 2004, Plaintiff spoke with Greg Thompson, the Southern Regional Human Resource Manager, about the position being too far away. In fact, the Lakeland position was far beyond the company's thirty-mile driving policy. As a result, the Plaintiff was taken out of the Lakeland position.

On August 23, 2004, Plaintiff again was offered a permanent job. It is debatable whether it was in Tampa or Zephyrhills. Both routes, however, were within the thirty-mile driving policy. After the reorganization, the company instituted a policy that a manager had the discretion to fire a trainee who did not take a route within thirty miles of his home. Jerry Cullen, the new Branch Sales Manager who took over from Angello, used his discretion to fire the Plaintiff. In response, the Plaintiff filed a retaliation claim against the Defendant.

## STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of

proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-324 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party..." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249.

## DISCUSSION

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff alleging disparate treatment in violation of the ADEA must demonstrate that age actually motivated the employer's decision. *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 141 (2000).

To evaluate ADEA claims that are based upon circumstantial evidence of discrimination and retaliation, this Court must use the framework established in *McDonnell Douglas Corp. v. Green,* 411 U .S. 792 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981). *See Reeves,* 530 U.S. at 142; *see also Reynolds v. CLP Corp.,* 812 F.2d 671, 674-75 (11th Cir.1987) (noting that the McDonnell Douglas test is applicable in ADEA cases). Under this framework, a plaintiff has the

initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.*

The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* The defendant's burden is merely one of production and is met "if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254-255. If the defendant proffers a non-discriminatory reason for its action against the plaintiff, the presumption of discrimination is eliminated and the burden shifts again to the plaintiff to provide admissible evidence sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were pretextual. *Id.* at 255-56.

## I. DISCRIMINATION

Defendant argues that there is no genuine issue of material fact as to the discrimination claim, and that they are, therefore, entitled to summary judgment. Plaintiff has failed to demonstrate that there is a genuine issue of material fact regarding the discrimination claim.

## A. Prima Facie Case of Discrimination

In order to establish a prima facie case of age discrimination based on circumstantial evidence, a plaintiff must satisfy a four part test: (1) that plaintiff was a member of the protected group of persons between the ages of forty to seventy; (2) that plaintiff was subjected to adverse employment action; (3) that plaintiff was qualified to do the job; and (4) that plaintiff was replaced by or otherwise lost a position to a younger individual. *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir.2000) (citing *Benson v. Tocco, Inc.,* 113 F.3d 1203, 1207-08 (11th Cir.1997)). A prima facie case of discriminatory failure to promote uses a similar analysis. *Denney v. City of Albany,* 247 F.3d 1172, 1183 (11th Cir. 2001) (explaining the plaintiff must prove he is from a protected class, was rejected from the position though qualified, and that other equally or

less qualified employees not members of the protected class were promoted).

Plaintiff has established a prima facie case of age discrimination. First, Plaintiff, born on February 5, 1945, is clearly a member of the protected age group between forty and seventy when the complained events occurred. Second, the plaintiff was qualified to do the job. In age discrimination cases, skills, and background determine who is qualified for a particular position. *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1360 (11th Cir.1999) (quoting *Clark v. Coats & Clark,* 990 F.2d 1217, 1227 (11th Cir.1993)). In this case, the Plaintiff had been in the Defendant's industry for several years. Moreover, he went through the company's four-week training program, serviced a variety of routes throughout the organization, and trained young sales associates.

Third, the Plaintiff was replaced by younger individuals and was rejected from several promotions in the Tampa Branch. Don Dunbar, John Seeley Jr., and Timothy Innamorato were all under forty years old and started the training program after the Plaintiff had completed the process. Each received a promotion in the Tampa Branch, while the Plaintiff, who was hired to work as a trainee in the branch, was only offered routes sixty to one hundred miles away.


Finally, the Defendant did take an adverse position against the Plaintiff. An adverse employment action occurs when there is a "series and material change in terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001); *See also Duffy v. Lowe's Home Centers, Inc,* 414 F.Supp.2d 1133, (M.D. Fla. 2006). There is no bright-line test for what is considered a material change to a plaintiff's terms, conditions, or privileges. *Id.* A lateral transfers that one does not approve or that imposes alteration of responsibilities does not by itself constitute an adverse action. *Id.*; *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1453 (11th Cir. 1998). However, the totality of circumstances combined prior to termination can create a

reasonable person to view the actions as adverse. *Bothwell v. RMC*, 2006 WL 1733858 (M.D. Fla. 2006).

The Plaintiff in this case was not merely transferred. He was never promoted to a job within the Tampa Branch despite being qualified over the younger less experienced trainees. In addition, his transfer to a different branch affected his ability to bid in the Tampa Branch, which would have include his seniority and given him priority over the routes. The record also shows that the Plaintiff was the only trainee transferred one hundred miles away from his branch during the reorganization process. Finally, and most importantly, the Plaintiff was apparently required to take a route in the "boondocks", which was against the company thirty-mile driving policy, for the sole purpose of forcing him to quit the company. As a result, this court concludes the Plaintiff has established his prima facie case of discrimination.

## B. Defendants' Proffered Legitimate Business Reason

Since Plaintiff has established a prima facie case of discrimination, Defendant's proffered nondiscriminatory reasons for the transfer and subsequent termination of Plaintiff must be considered. *Damon v. Fleming Supermarkets of Fla., Inc*., 196 F.3d 1353, 1361 (C.A. Fla. 1999). The Eleventh Circuit has held that a defendant may terminate an employee for a good or bad reason without violating federal law. *Id.* (citing *Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)). It is not the Court's job to determine whether Defendant's employment decisions are right or fair, but whether such decisions were motivated by age discrimination. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984). In the present case, Defendant has clearly offered legitimate, non-discriminatory reasons for not promoting and ultimately terminating Plaintiff.

Defendant states that the Plaintiff was denied a permanent position within the Tampa Branch prior to reorganization because the Defendant assigned permanent routes to trainee's based on where they lived and based on the manager determining who he felt

was best qualified. It is uncontested that all three younger trainee's lived closer to the permanent routes and that the Plaintiff received poor service evaluations at the time the routes were open. In addition, the Defendant has explained that the company reorganization policy required trainees to be assigned to the stockroom workgroup closest to their homes. Plaintiff's home was in Zephyrhills and he was, therefore, assigned without contemplation for age to the Ocala Branch workgroup. Finally, the Defendant has explained that the Plaintiff was terminated because he violated the company policy of not taking a route within thirty miles from one's permanent address. As a result, this Court holds the Defendant's promotional, transfer, and termination decisions were based on a legitimate age-neutral policies.

## C. Pretext

Since Defendant has offered nondiscriminatory reasons for the transfer, promotion, and termination of Plaintiff, Plaintiff now bears the burden of offering significant probative evidence for a jury to conclude that Defendant's reasons are a mere pretext for age discrimination. *Damon,* 196 F.3d at 1361 (citing *Bogle v. Orange County Bd. of County Comm'rs,* 162 F.3d 653, 658 (11th Cir.1998); *see also Isenbergh v. Knight-Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 443-444 (11th Cir.1996))*.* "A plaintiff may not establish an employer's proffered reason as pretextual merely by questioning the wisdom of the employer's reason, at least not where ... the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997)*; see also Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997) (holding that "an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence"). Thus, to survive summary judgment, the plaintiff must provide "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." *Combs*, 106 F.3d at 1529. A plaintiff can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the

employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. At 256.

Plaintiff has failed to meet the burden of offering sufficient probative evidence for a jury to conclude that Defendant's reasons are pretextual and that discrimination may have been the motivating reason for Defendant's actions. In support of Plaintiff's argument that Defendant's proffered reasons are pretextual, Plaintiff states that the company knew about his seniority and his plans to move to Clearwater and that this criteria should have been taken into account when being assigned a route or being transferred. However, this Court has no right to require an employer to consider any criteria in its promoting decisions. *LeBlanc v. TJX Companies, Inc.*, 214 F.Supp.2d 1319, 1330 (S.D. Fla. 2002).

The Plaintiff also fails to offer any evidence other than his testimony to rebut the Defendant's evidence of its geographical route policy or the evidence of his poor performance. Moreover, he concedes that he was not transferred to the Ocala Branch because of his age. Finally, the Plaintiff concedes that Gerry Cullen, his manager, did have the discretion to fire him if he did not take a route within thirty miles of his home. In addition, he has not presented any evidence that his manager had any motive to fire him because of his age. As a result, this Court concludes that the Defendant's actions that affected the Plaintiff before and after the reorganization were not related to any discriminatory age policy. Because Plaintiff failed to produce sufficient evidence for a reasonable fact-finder to conclude that Defendant's proffered nondiscriminatory reason was pretextual, the Defendant is entitled to summary judgment on the discrimination claim.

## II. RETALIATION

In their Motion for Summary Judgment, Defendant argues that there is no genuine issue of material fact regarding Plaintiff's claim for retaliation, and that the Defendant is entitled to judgment against Plaintiff as a matter of law.  Plaintiff has also filed a Motion for Summary Judgment asserting that no genuine issue of material fact exists regarding

his retaliation claim, and that Plaintiff, rather than Defendant, should be entitled to judgment against the Defendant as a matter of law.

In order for Plaintiff to succeed in his current claim of retaliation under the ADEA, he must show that: (1) he engaged in a statutorily protected expression, (2) he suffered an adverse employment action, and (3) there is some causal relation between the two events. *Olmsted v. Taco Bell Corp.,* 141 F.3d 1457 (11th Cir .1998), *see also Macean v. City of St. Petersburg,* 194 F.Supp.2d 1290 (M.D.Fla.2002).  In their motion, Defendant concedes that the Plaintiff has met his burden as to the first two elements. As such, at issue is only whether there is a causal link between the statutorily protected expression and the adverse employment action.

Defendant asserts that Plaintiff cannot prove that his statutorily protected expression had a causal connection to his transfer and eventual termination. "To prove a causal connection, we require a plaintiff only to demonstrate 'that the protected activity and the adverse action were not wholly unrelated'." *Farley v. Nationwide Mut. Ins*. Co., 193 F.3d 1322, 1337 (11th Cir.1999). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir.1999) (quoting *Goldsmith v. City of Amore*, 996 F.2d 1155, 1163 (11th Cir.1993) (internal citations omitted)). "We have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse employment action." *Farley*, 197 F.3d at 1337.

As to the temporal proximity element, courts have stated that, "if there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law."*Higdon v. Jackson,* 393 F.3d 1211, 1220-21 (11th Cir.2004) (3-month delay too

long to reasonably infer causation); *but see also Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998) (explaining one month between the protected activity and the adverse action is not too protracted)). Plaintiff engaged in a statutorily protected expression when he initially notified his superior and human resource manager he felt he was being unlawfully discriminated against because of his age on June and August 2004. In addition, he filed a formal complaint with the EEOC in July 2004. Subsequently, Plaintiff was transferred during the reorganization and required to take a route beyond company policy for the sole purpose that he would quit his job. This occurred less than a month after he filed his EEOC complaint. The record indicates Ratliff, who assigned the route, did know about the verbal and EEOC complaints. As a result, this Court concludes there is enough a casual connection to the protected activity for the Plaintiff to establish his prima facie case of retaliation.

### B. Defendants' Proffered Legitimate Business Reason

The burden now shifts to the Defendant to state a non-discriminatory reason for transferring and terminating the plaintiff. A court's inquiry is limited to determining whether the employer gave an honest explanation for its behavior. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

The Defendant has offered evidence that the transfer and the termination were based on non-discriminatory reasons. First, the Defendant has shown that the reorganization required the Plaintiff to be transferred near the workgroup in the Ocala Branch in accordance to its policy. In addition, the Defendant has explained it had a neutral non-discriminatory policy that a trainee could be fired if he refused to accept a route assignment less than thirty miles from his home. Both the Plaintiff and the Defendant dispute what route assignment was offered before the Plaintiff was terminated. Nevertheless, both assignment routes, in Zephyrhills or Tampa, fell within the company thirty-mile policy. As a result, this Court concludes that the Defendant has met its burden

of stating a non-discriminatory reason for the transfer and termination.

## C. Pretext

In order for the Plaintiff to survive summary judgment, he must offer "significantly probative evidence showing that the asserted reason is merely a pretext for discrimination". *Sheppard v. Sears, Roebuck & Co.*, 391 F.Supp.2d 1168, 1180 (S.D. Fla. 2005).  "Pretext means more than an inconsistency or mistake, pretext is a lie, specifically a phony reason for some action." *Freeman v. Fed. Express Corp.*, 2006 U.S. Dist. LEXIS 11599 at *30. This court must evaluate whether the plaintiff can produce "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact-finder could find them unworthy of credence." *Combs*, 106 F.3d 1519, 1528 (11th Cir. 1997). However, improper motive of one member does not impart discrimination on the whole board. *Rolle v. Worth County Sch. Dist.*, 128 Fed. Appx. 731, 733 (11th Cir. 2005).

Plaintiff relies on Ratliff's remarks, regarding him to the "boondocks" as enough to show pretext for discrimination. However, he does not present any direct or circumstantial evidence that Cullen, his manager, terminated him because he filed an EEOC claim. Instead, the Plaintiff has established through circumstantial evidence that Mr. Ratliff may have had an improper motive. However, improper motive on Ratliff does not impute Cullen of having a similar motive. Therefore, this Court holds that the Plaintiff has not established any significant probative evidence or an inconsistency to illustrate the Defendant business decisions was a pretext to discrimination.

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 19) is **GRANTED on both grounds,** and Plaintiff's Motion for Summary Judgment (Dkt. 21) be **DENIED,** and the Clerk of Court is directed to enter judgment for the defendants and close this case.

**DONE AND ORDERED** in Chambers in Tampa, Florida, this 8th day of

13

September 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record